UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

NATALIYA MYKYTYAK-PENNING,

        *Plaintiff,*

  -*against*-

PRIVATE EYES GENTLEMEN'S CLUB
a/k/a AAM HOLDING CORP., THREE B'S
HOSPITALITY GROUP, a/k/a XYZ CORP.,
BARRY LIPSITZ and BARRY LIPSITZ, JR.,

        *Defendants.*

------------------------------------------------------------X

14 Civ. 5152 (PAC)

**OPINION & ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-16-15

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Nataliya Mykytak-Penning ("Penning") brings this suit against her former employers, Private Eyes Gentlemen's Club, also known as AAM Holding Corp.; Three B's Hospitality Group, also known as XYZ Corp.; Barry Lipsitz; and Barry Lipsitz, Jr. (collectively, "Defendants") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), §§ 650 *et seq.*

Defendants now move to dismiss the action and compel arbitration, pursuant to an arbitration agreement Penning signed ten months prior to her commencement of this action. For the following reasons, the motion is granted and Penning's complaint is dismissed.

1

## BACKGROUND

Penning worked as an entertainer at adult entertainment clubs owned by Defendants[1] from September 2012 until June 30, 2014. Compl. ¶ 6. Penning alleges that Defendants improperly classified her as an independent contractor, and deprived her of minimum wage, overtime, customer tips, and other rights under federal and state labor laws. *Id.* ¶¶ 4, 57-83.

On September 17, 2013, several former employees filed a putative collective and class action against Defendants alleging similar wage and labor law violations. *See Flynn et al. v. New York Dolls Gentlemen's Club*, 13 Civ. 6530 (the "Flynn Action"), Dkt. 1. On September 20, 2013, Defendants presented Penning and other putative class members with arbitration agreements and told these employees to sign the agreements before their shifts began. *See* Penning Decl., Dkt. 31, ¶¶ 4-6. Plaintiff did so. *Id.* These agreements provided that "any controversy, dispute, or claim arising out of Employee's employment at the Company . . . whether contractual, in tort, or based upon statute, shall be exclusively decided by binding arbitration." Lipsitz Decl., Dkt. 26, Ex. A. The agreement specifically states that "[c]laims subject to arbitration include, without limitation, claims arising under" the FLSA and the NYLL. *Id.* At the time they signed these agreements, the employees were not aware of the filing of the Flynn action, nor were they told that by signing, they were waiving their rights to pursue claims in court. Penning Decl., ¶ 7. On April 2, 2014, the parties in the Flynn Litigation reached a

---

[1] Defendants' counsel state that they do not represent Three B's Hospitality Group a/k/a XYZ Corp. "because there is no such entity or business." Def. Mem. at 1 n.1.

settlement, without any enforcement or attempted enforcement of the arbitration agreement. 13 Civ. 6530, Dkt. 35. On July 10, 2014, Penning filed this suit, and on July 15, 2014, her counsel informed Defendants' counsel that Penning was opting out of the class. Kimmel Decl., Dkt. 25, Ex. 2.

## DISCUSSION

### I. Legal Standard

Under the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a contract to settle by arbitration a controversy thereafter arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A dispute is subject to arbitration where a valid agreement to arbitrate under the contract in question exists and the dispute falls within the scope of the arbitration agreement. *Nasdaq OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1032-33 (2d Cir. 2014). Where a valid such agreement exists, the Court must consider the "liberal federal policy favoring arbitration agreements" when determining the scope of the agreement, *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone*, 460 U.S. at 24-25. Contract defenses such as fraud, duress, and unconscionability may invalidate an arbitration agreement where applicable. *See Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010). The party "'resisting arbitration bears the burden of proving that the claims are unsuitable for arbitration.'" *LaVoice v. UBS Fin. Servs., Inc.*, 2012 WL 124590, at *2 (S.D.N.Y. Jan. 13, 2012) (quoting *Green Tree Fin. Corp. –Alabama v. Randolph*, 531 U.S. 79, 91 (2000)).

## II. Analysis

Defendants argue that this dispute must be submitted to arbitration because Penning is subject to a valid and enforceable arbitration agreement which specifically governs these claims. Def. Mem. at 6-12.

Penning maintains that the arbitration agreement is an improper class communication and therefore cannot be enforced. Pl. Mem. at 3-7. Since Defendants distributed the arbitration agreements to employees three days after the Flynn action was filed, Penning asserts that Defendants improperly communicated with the class and cannot rely on the agreements to compel arbitration. *Id.* She relies on cases in which arbitration agreements signed by putative class members were invalidated when defendants attempted to compel arbitration in the same litigation. *See, e.g., Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 922-23 (11th Cir. 2014); *Balsanyan v. Nordstrom, Inc.*, 2012 WL 760566, at *4 (S.D. Cal. 2012); *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 254 (S.D.N.Y. 2005).

The enforceability of the arbitration agreement in the Flynn action is of no relevance to the instant action, however, and even if the arbitration agreement is determined to be an improper class communication in the Flynn action, that would not impact the agreement's enforceability here. Penning filed her own suit ten months after the Flynn action was filed, ten months after she signed the arbitration agreement, and nearly three months after the putative class in the Flynn action reached a class-wide settlement in principle. The arbitration agreement specifically covers disputes arising under the FLSA and the NYLL. Penning fails to explain how the arbitration agreement signed ten months earlier and covering the dispute at issue is unenforceable in the instant litigation, regardless of its enforceability (or unenforceability) in the Flynn action.

4

The cases relied upon by Penning speak only to the enforceability of the arbitration agreement in the pending class action and not in a future litigation filed by an opt-out plaintiff on her own behalf. Indeed, in *Billingsley*, while declining to enforce the arbitration agreements as an invalid class communication with respect to the pending litigation, the Court stated that "it was not ruling on the enforceability of the arbitration agreements as they relate to other cases or controversies." 560 F. App'x at 923. Likewise, in a case brought by putative members of the class in *Balasanyan*, the Court stated that "[s]ince the August 2011 [arbitration agreement] became effective before this case was filed, the justification for not enforcing it that was present in the *Balasanyan* case and other cases with similar circumstances is not present here." *Gulley v. Nordstrom, Inc.*, 2014 WL 296034, at *2 (N.D. Ill. Jan. 27, 2014); *accord In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 251 (S.D.N.Y. 2005) ("[C]lass members' rights *in this litigation* were protected as of the filing date of the complaint") (emphasis added). Similarly, there is no reason that the enforceability of the arbitration agreement in the Flynn action should impact its enforceability here.

Penning implies that Defendants obtained her signature on the agreement by duress or coercion, but this argument is vague and inchoate; nor does she argue that the arbitration agreement should be voided because of procedural or substantive unconscionability. "[T]o prevail on an unconscionability claim under New York law, a plaintiff must show that an agreement is both substantively and procedurally unconscionable at the time it is entered into . . . This requires some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *See Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 569 (S.D.N.Y. 2013) (internal quotation marks

5

omitted) (citing *Lawrence v. Miller*, 901 N.E.2d 1268, 1270 (2008); *King v. Fox*, 851 N.E.2d 1184, 1191 (2006)).

Penning has failed to even suggest that these two elements are met here. Penning has asserted no other explanation in support of the argument that the arbitration agreement is unenforceable; indeed, the entirety of her argument rests on her classification of the agreement as an improper class communication and vague suggestions that she signed the agreement under duress.[2] This is insufficient to show that the arbitration agreement should not be enforced. Accordingly, the Court finds these claims subject to arbitration.

Defendants request that the complaint be dismissed, rather than stayed pending arbitration. The Court may dismiss an action where all the issues to be decided must be arbitrated. *See Arrigo v. Blue Fish Commodities, Inc.*, 704 F. Supp. 2d 299, 304-05 (S.D.N.Y. 2010). While "the Second Circuit has noted that the decision between dismissal and stay has implications for the speed with which arbitration may begin," *Dixon v. NBCUniversal Media, LLC*, 947 F. Supp. 2d 390, 405 (S.D.N.Y. 2013) (citing *Salim Oleochemicals v. M/V Shropshire*, 278 F.3d 90, 93 (2d Cir. 2002)), in light of Defendants' express preference for dismissal, Def. Mem. at 9-10, the Court grants this request.

---

[2] Even if Penning's duress argument was presented more comprehensively, it would likely be rejected. Requiring an employee to sign an arbitration agreement as a condition of employment "does not in itself render the [arbitration agreement] unconscionable." *Isaacs*, 968 F. Supp. 2d at 570 (citing *Sablosky v. Edward S. Gordon, Co.*, 535 N.E.2d 643, 647 (1989)); *accord Ragone*, 595 F.3d at 121.

## CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration is granted and this action is dismissed. The Clerk of Court is directed to close this case.

Dated: New York, New York  
      March 16, 2015

SO ORDERED

*Paul Crotty*

PAUL A. CROTTY  
United States District Judge